# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 25, 2011 Session Heard at Cookeville[1]

## STATE OF TENNESSEE v. DAVID NAGELE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 75138      Bobby R. McGee, Judge**

_____

**No. E2009-01313-SC-R11-CD - Filed August 25, 2011**

_____

The defendant pled guilty to attempted aggravated sexual battery and was sentenced to six years of enhanced probation. At the time, the trial court did not warn the defendant that, upon the expiration of his sentence, he would be subjected to lifetime community supervision, which is mandated by statute upon a conviction for attempted aggravated sexual battery and other sex offenses. Just before the sentence expired, the State filed a petition to amend the judgment to include lifetime community supervision. On the same day that the trial court corrected the judgment, the defendant filed a motion to withdraw his guilty plea, which the trial court denied. On appeal, the Court of Criminal Appeals affirmed, holding that the defendant had been adequately informed of the lifetime community supervision requirement by his trial counsel. We granted the defendant's application for permission to appeal to determine the effect of our decision in Ward v. State, 315 S.W.3d 461 (Tenn. 2010), which was filed after the release of the opinion of the Court of Criminal Appeals. Because the trial court failed to warn the defendant of the mandatory nature of lifetime community supervision, as is required by our ruling in Ward, and the State was unable to establish that the error was harmless beyond a reasonable doubt, the judgment of the Court of Criminal Appeals is reversed and the cause is remanded to the trial court to permit the defendant to withdraw his plea of guilt.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Reversed and Case Remanded**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

_____

[1] Oral argument was heard in this case on May 25, 2011, in Cookeville, Putnam County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Joshua D. Hedrick, Knoxville, Tennessee, for the appellant, David Nagele.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; Rachel West Harmon, Assistant Attorney General; Randall Nichols, District Attorney General; and Charme Prater Knight, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION
## Facts and Procedural History

After being indicted for aggravated sexual battery, David Nagele (the "Defendant"), on November 13, 2002, pled guilty to attempted aggravated sexual battery, a lesser-included offense. The trial court imposed a six-year sentence of enhanced probation. Although Tennessee Code Annotated section 39-13-524 (Supp. 1999)[2] mandated lifetime community

---

[2] At the time the offense was committed, Tennessee Code Annotated section 39-13-524 provided as follows:

> (a) In addition to the punishment authorized by the specific statute prohibiting the conduct, any person who, on or after July 1, 1996, commits a violation of § 39-13-502 [aggravated rape], § 39-13-503 [rape], § 39-13-504 [aggravated sexual battery], § 39-13-522 [rape of a child], or attempts to commit a violation of any such section, shall receive a sentence of community supervision for life.

> (b) The judgment of conviction for all persons to whom the provisions of subsection (a) apply shall include that the person is sentenced to community supervision for life.

> (c) The sentence of community supervision for life shall commence immediately upon the expiration of the term of imprisonment imposed upon the person by the court or upon the person's release from regular parole supervision, whichever first occurs.

> (d)(1) A person on community supervision shall be under the jurisdiction, supervision and control of the board of probation and parole in the same manner as a person under parole supervision. The board is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.

> (2) The board is authorized to impose and enforce a supervision and rehabilitation fee upon a person on community supervision similar to the fee imposed by § 40-28-201. To the extent possible, the board shall set the fee in an amount that will substantially defray the cost of the community supervision program. The board shall also establish a fee waiver procedure for hardship cases and indigency.

(Emphasis added). The statute was amended in 2010 to include the offense of aggravated rape of a child,
(continued...)

-2-

supervision for the crime of attempted aggravated sexual battery, neither the plea agreement nor the transcript of the proceedings made mention of the requirement. Moreover, the portion of the judgment form providing that "[p]ursuant to 39-13-524 the [D]efendant is sentenced to community supervision for life following the sentence expiration" was left unchecked.

On February 19, 2009, two days before the expiration of the Defendant's sentence, the State filed a petition asking that the judgment be amended to provide for lifetime community supervision as required by the statute. When, one month later, the trial court corrected the judgment, the Defendant moved to set aside the conviction, claiming that because he was not informed of the lifetime community supervision requirement, his plea was not knowingly and voluntarily made.[3]

At the hearing on the motion, the Defendant testified that he pled guilty to attempted aggravated sexual battery based upon his agreement with the State that his sentence would consist of six years enhanced probation, court costs, fines, sex offender registration, class training, and nothing more. He insisted that his trial counsel never addressed the statute mandating community supervision for life and that neither the trial judge nor the prosecuting assistant district attorney made reference to the requirement. He further testified that he would not have pled guilty had he been aware of the statute. The Defendant also contended that his trial counsel did not, after entry of the judgment, inform him that the lifetime supervision requirement had been left out or suggest that the omission might "slide through" without being noticed.

Trial counsel, while testifying that he had numerous conversations with the Defendant during the course of his representation, acknowledged that "community supervision had just come on the books and [that] this was the first case after that enactment had come from the legislature that I had to deal with community supervision."[4] He recalled that he did not

---

[2](...continued)
Tenn. Code Ann. § 39-13-531, or an attempt to commit that offense. See Act of Mar. 22, 2010, ch. 646, § 1, 2010 Tenn. Pub. Acts 68, 68.

[3] In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court held that a trial court may not accept a guilty plea "without an affirmative showing that it was intelligent and voluntary," id. at 242, and directed courts to "'canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.'" Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009) (quoting Boykin, 395 U.S. at 244); see also Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006).

[4] The statute addressing lifetime supervision had been amended in 1998. See Act of May 18, 1998, ch. 1049, § 11, 1998 Tenn. Pub. Acts 936, 937. The plea negotiations between the State and the defense
(continued...)

discuss with the Defendant the possibility that he would be subjected to community supervision for life "until the very end" of the plea negotiations, explaining that the requirement was "unfamiliar territory for the prosecution as well as the defense." Trial counsel did, however, claim that he "was aware of [the statute]" and discussed the subject with the Defendant. He further testified that he informed the Defendant in advance of the plea that "[t]here was the possibility [that supervision for life] would be imposed, but it was never requested" nor addressed as a "part of the negotiation of the case." Trial counsel described his communication with the Defendant as "more or less in the abstract, [a ']what if['] kind of discussion." When asked directly whether he had informed the Defendant that community supervision for life was required by law for an attempted aggravated sexual battery conviction, trial counsel responded as follows:

> Yes. . . . I was aware of that, so I was concerned that it would be part of the judgment. And our concern was the sort, well, if no one mentions it, maybe not. [The Defendant] didn't want it. I didn't want it. . . . It was possible that it could be imposed in the judgment. I knew that. I had to make [the Defendant] aware of that. . . . And when the judgment came out, indeed, it didn't have lifetime supervision checked on it. And we discussed it after that. . . . the discussion essentially was, what do we do about that[?] And our decision was nothing. You know, it's not our job to correct that.

(Emphasis added). Trial counsel also recalled that he and the Defendant "were . . . interested in getting quietly out of th[e] situation" because of incriminating information the State might glean from the Defendant's psychosexual evaluation and that this "threat . . . was also weighing on us while we were trying to be quiet about the threat of community supervision." He speculated that these distractions might explain the Defendant's failure to remember their conversations about community supervision for life. When the State specifically asked trial counsel whether the Defendant had "entered [his] plea . . . knowing that [it] carried th[e] consequence of community supervision," trial counsel responded, "I think so," and expressed his belief that the Defendant had entered the plea "knowing that [it] was possible and hoping it wasn't going to happen." (Emphasis added). During cross-examination, however, trial counsel confirmed that neither the prosecuting assistant district attorney nor the trial judge, either in open court or in the documents associated with the guilty plea, informed the

---

[4](...continued)
occurred between 2002 and 2003, which was between four and five years after the amendment's effective date.

-4-

Defendant of the lifetime community supervision requirement.[5]

At the conclusion of the hearing, the trial court, while observing that the Defendant did not appear to be untruthful, commented that "nobody knew at that time what [community supervision for life] was going to be[,] . . . how it was going to play out, what the rules and restrictions and responsibilities and duties and all of those things were going to be." The trial court found "that notwithstanding the fact that he couldn't be told in advance" of the specifics, the Defendant had been advised "that he was going to be subject to supervision by the State . . . for the rest of his life."[6]

The Court of Criminal Appeals affirmed, holding that the Defendant did not receive erroneous advice from his counsel about the supervision requirement. State v. Nagele, No. E2009-01313-CCA-R3-CD, 2010 WL 2075869, at *3 (Tenn. Crim. App. May 24, 2010).[7] Our intermediate appellate court determined that "[t]he Defendant accepted the plea agreement hoping that he would not be subject to community supervision for life but aware that it was required" by the statute, and that despite the "uncertainties about the specifics of the program," the Defendant had entered the plea knowingly and voluntarily. Id. at *3. Although the panel was divided on whether community supervision for life was a direct or collateral consequence of a sex offender's guilty plea, id. at *4, all agreed that, regardless of how the requirement was classified, "the Defendant was not prejudiced by the trial court's

---

[5] The cross-examination of the Defendant's trial counsel centered around whether there was a discussion "about the specifics of the program." Trial counsel stated that one of the reasons the Defendant's case stood out in his mind was "because we didn't really know what [community supervision for life] meant" because "[t]he sex offender guidelines weren't even written at that point. . . . And had [the Defendant] asked me, I wouldn't have been able to tell him. I wouldn't have known."

[6] At the time of the trial court's decision, our opinion in Ward v. State, 315 S.W.3d 461, 476 (Tenn. 2010), holding that the trial court has a duty to inform a defendant about lifetime community supervision prior to the acceptance of a plea, had not been filed. While the trial judge acknowledged that the panel of the Court of Criminal Appeals in Ward had held that a defendant need not be advised of lifetime community supervision in order to enter a valid guilty plea, see Ward v. State, No. W2007-01632-CCA-R3-PC, 2009 WL 113236, at *11 (Tenn. Crim. App. Jan. 14, 2009), he ruled that he "would have come to the same conclusion."

[7] Although the Court of Criminal Appeals focused on the Defendant's argument that he was given "erroneous advice" about lifetime community supervision based upon "counsel's inability to advise him of the specifics of the program," Nagele, 2010 WL 2075869, at *2, the Defendant also argued that his trial counsel's "advice was not an accurate recitation of how the law would treat the omission of community supervision for life from the judgment" because the record established that trial counsel had advised "that if lifetime community supervision was not part of the judgment, then it would not be required as part of his sentence or thereafter." This, the Defendant argued, "created . . . a faulty understanding of the law and the circumstances surrounding [the] plea."

failure to advise him of the program because his attorney did so." Id. (citing Johnson v. State, 834 S.W.2d 922 (Tenn. 1992)).

Shortly after the release of the Court of Criminal Appeals' opinion in this case, this Court ruled in Ward that mandatory lifetime supervision is a direct and punitive consequence of a guilty plea to the crimes contained in Tennessee Code Annotated section 39-13-524(a), including attempted aggravated sexual battery, and that trial courts have "an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea." 315 S.W.3d at 476. Because the trial court, not having the benefit of the Ward ruling, did not inform the Defendant of the lifetime supervision requirement prior to accepting his guilty plea, the issue before us is whether the testimony of the Defendant's counsel, implicitly accredited by the trial judge, demonstrates that the trial court's failure to adequately inform the Defendant of the consequences of the plea was harmless beyond a reasonable doubt.

**Standard of Review**

When a trial court has not informed a defendant of a direct consequence of his or her guilty plea, "the judgment of conviction must be set aside unless the State proves that the error was harmless beyond a reasonable doubt." Ward, 315 S.W.3d at 476 (citing State v. Neal, 810 S.W.2d 131, 138-40 (Tenn. 1991), overruled in part on other grounds by Blankenship v. State, 858 S.W.2d 897, 902 (Tenn. 1993)). "If it can be shown that the defendant already knew what he was not advised, . . . the harmless nature of the error is classic." Ward, 315 S.W.3d at 476 (quoting Neal, 810 S.W.2d at 139) (internal quotation marks omitted). The State's burden of proving harmless error, however, "remains quite stringent," State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008), and the reviewing court must be satisfied beyond a reasonable doubt that the error did not affect a defendant's decision to plead guilty. See State v. Riels, 216 S.W.3d 737, 747 (Tenn. 2007). If, however, "'a reasonable doubt exists at the close of the proof, then the judgment must be set aside.'" Ward, 315 S.W.3d at 476 (quoting Neal, 810 S.W.2d 139-40); see also Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (reaffirming "the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt").

**Analysis**

The Defendant argues that the State has not demonstrated that the trial court's failure to warn of the statutory lifetime community supervision requirement was harmless beyond a reasonable doubt. He contends that "the only advice [he] received on the subject indicated that . . . the penalty was possible but not mandatory." He further argues that trial counsel's "advice to [him] implie[d] that supervision for life would not apply if it was not discussed at the plea or imposed in the original judgment," which was "not sufficient to give [him] the

required level of knowledge regarding the consequences of his plea to make the trial court's failure to canvass the matter harmless error." In response, the State, while conceding that the trial court committed constitutional error by failing to advise the Defendant of the lifetime supervision requirement, argues that the error was harmless beyond a reasonable doubt because the Defendant, unlike the defendant in Ward, had been advised in advance of the plea that lifetime community supervision was a requirement for his sentence. The State also asserts that because trial counsel mentioned to the Defendant that lifetime community supervision was not included in the judgment form, "the proof does not support the . . . claim that counsel's advice implied that lifetime supervision would never apply . . . if it was not included in the original judgment." As a result, the State contends that the Court of Criminal Appeals correctly affirmed the trial court's denial of the motion to withdraw the guilty plea.

Because "[a] guilty plea operates as a waiver of important rights, [it] is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).[8] "'[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process'" and must be set aside. Blankenship, 858 S.W.2d at 903 (quoting McCarthy v. United States, 394 U.S. 459, 466 (1966)). A plea is not voluntary or knowing if it results from, among other things, ignorance or misunderstanding. See State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003).

Both the United States and Tennessee Constitutions require not only that, prior to entering a guilty plea, a defendant understand that he or she is "waiving the privilege against self-incrimination, the right to a jury trial, and the right to confront his [or her] accusers," Grindstaff, 297 S.W.3d at 218 n.11 (citing Boykin, 395 U.S. at 243-44),[9] but also the direct consequences of the guilty plea. Blankenship, 858 S.W.2d at 905; see also King v. Dutton,

---

[8] This Court has previously held that the following factors may be considered by the trial court in determining whether a guilty plea has been knowingly and voluntarily given:

> "(1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the trial court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial."

Grindstaff, 297 S.W.3d at 218 (quoting Howell, 185 S.W.3d at 330-31).

[9] Although in Tennessee a trial court must inform a defendant of additional information in order for his or her guilty plea to be knowing and voluntary, see, e.g., Tenn. R. Crim. P. 11(b)(1)(A)-(J); Neal, 810 S.W.2d at135-36, these particular requirements are not at issue in this case.

17 F.3d 151, 153 (6th Cir. 1994) (observing that "[t]he defendant need only be aware of the direct consequences of the plea" and that the trial court need not "inform the defendant of all the possible collateral consequences of the plea"). "The most obvious 'direct consequence' of a conviction is the penalty to be imposed," Blankenship, 858 S.W.2d at 905, and yet a direct consequence may also be that which has "a definite, immediate and largely automatic effect on the range of the defendant's punishment." Ward, 315 S.W.3d at 467 (citation omitted); accord United States v. Littlejohn, 224 F.3d 960, 965 (9th Cir. 2000) (same). Because the lifetime supervision requirement of Tennessee Code Annotated section 39-13-524 "imposes an additional set of restrictions and requirements on the offender after serving his or her entire sentence of incarceration," and, therefore, is a direct consequence of a guilty plea, a defendant must be informed of it prior to entering a valid guilty plea to the crimes listed in the statute. Ward, 315 S.W.3d at 476.

Whether the advice of the Defendant's counsel establishes that the trial court's failure to warn is harmless beyond a reasonable doubt is a fact-intensive inquiry. Cf. Van Arsdall, 475 U.S. at 684 (observing that whether a violation of the constitutional right of confrontation "is harmless in a particular case depends upon a host of factors"). In Ward, the State was unable to establish that the trial court's failure to warn of the lifetime community supervision requirement was harmless beyond a reasonable doubt because Ward's counsel did not inform him of it. See 315 S.W.3d at 476-77. This case is different in that the trial court implicitly accredited trial counsel's contention that the Defendant had some awareness of the statutory mandate. Left unresolved in Ward was the level of information an accused must receive about the lifetime supervision requirement before a guilty plea to one of the offenses contained in Tennessee Code Annotated section 39-13-524(a) may be knowingly and intelligently made.

The Defendant concedes that all of the attendant consequences of lifetime community supervision need not be provided in order to enter a valid plea to any of the offenses listed in Tennessee Code Annotated section 39-13-524(a). See Tenn. Code Ann. § 39-13-524(d)(1) ("The board [of probation and parole] is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person."). He does, however, assert that a valid plea requires a basic understanding of the requirement.

Tennessee Code Annotated section 39-13-524(a) provides that a person convicted of attempted aggravated sexual battery "shall receive a sentence of community supervision for life" above and beyond the punishment authorized by the statute prohibiting the conduct. (Emphasis added). Further, subsection (b) of the same provision sets out that the judgment of conviction for a person convicted of attempted aggravated sexual battery "shall include that the person is sentenced to community supervision for life." Tenn. Code Ann. § 39-13-

-8-

524(b) (emphasis added). The terms of this statute demonstrate that the failure to include lifetime community supervision as part of the Defendant's sentence "was in direct contravention of the statute." State v. Bronson, 172 S.W.3d 600, 602 (Tenn. Crim. App. 2005); see also Rountree v. State, No. M2008-02527-CCA-R3-PC, 2009 WL 3163132, at *1 (Tenn. Crim. App. Oct. 2, 2009). Whether the trial court's failure to check the box on the judgment form to indicate that the Defendant was sentenced to community supervision for life is considered to result in an illegal sentence or to be a clerical error, trial courts have the authority, as well as a duty, to correct the judgment as soon as the error is brought to their attention. See State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978);[10] see also State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003).

In this instance, trial counsel discussed lifetime community supervision with the Defendant in terms of possibilities; that is, even though the State had not insisted upon the requirement as a part of any plea agreement, the tenor of the communication appears to have been that the provision might or might not be included in the judgment. Trial counsel surmised that the Defendant knew that lifetime community supervision was possible, but "hop[ed] it wasn't going to happen." While the conversations between the Defendant and his trial counsel could be construed to mean that they chose to stay silent after entry of the judgment because they realized that lifetime community supervision could be subsequently imposed if it was brought to the trial court's attention, an equally plausible inference is that the Defendant and trial counsel believed that lifetime community supervision would not, and of greater significance, could not be imposed if it was not included in the original judgment. The exact nature of the information imparted to the Defendant is unclear. Because, however, the State carries the burden, any ambiguity in the record should be construed favorably to the Defendant. In our view, the record does not demonstrate that the Defendant had a knowing and intelligent understanding of the consequences of his plea.

In order for a guilty plea to any of the offenses in Tennessee Code Annotated section 39-13-524(a) to have been knowingly and voluntarily made, an accused must know and understand the mandatory nature of lifetime community supervision. As stated in Ward, "[i]f a defendant receives incorrect legal advice, his or her guilty plea is potentially a product of 'misunderstanding.'" 315 S.W.3d at 476. Because the Defendant received what might be

---

[10] The Defendant, of course, argues only that his guilty plea was invalid because he was not adequately warned about the mandatory nature of lifetime community supervision, and does not challenge the legality of his sentence. This Court has previously observed, however, that when an illegal sentence is the product of a plea agreement, a remand is often necessary to determine whether the defendant should be allowed to withdraw his guilty plea. See Burkhart, 566 S.W.2d at 873. But see Smith v. Lewis, 202 S.W.3d 124, 130 (Tenn. 2006) (concluding that when the record "does not demonstrate on its face that the illegal provision . . . was a bargained-for element of [the defendant's] plea," the guilty plea itself "and the resulting conviction are . . . not infected with the illegality" and remain intact).

classified as uncertain advice from his counsel as to the nature of lifetime community supervision, we cannot state with confidence that the State established that the Ward error qualifies as harmless beyond a reasonable doubt. Moreover, it does not appear to have been known by the Defendant at the time of the plea that even if the provision was left out of the original judgment, it was subject to correction at any time. Cf. May v. Carlton, 245 S.W.3d 340, 344 (Tenn. 2008) ("An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time."). The Defendant, therefore, has demonstrated "manifest injustice" pursuant to Tennessee Rule of Criminal Procedure 32(f)(2),[11] and should be afforded the opportunity to withdraw his guilty plea.

### Conclusion

Because the Defendant did not have a full understanding of the mandatory nature of lifetime community supervision, the State has failed to prove beyond a reasonable doubt the harmlessness of the trial court's failure to warn the Defendant of the statutory requirement. In consequence, this Court cannot state with confidence that the guilty plea was knowingly and intelligently made. The judgment of the Court of Criminal Appeals is reversed and the cause is remanded to the trial court for the withdrawal of the plea. Costs of this appeal are taxed to the State.

_____
GARY R. WADE, JUSTICE

---

[11] Tennessee Rule of Criminal Procedure 32(f)(2) provides that "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." We have previously observed that "manifest injustice" is demonstrated when, among other things, a "plea was not knowingly, voluntarily, and understandingly entered." State v. Crowe, 168 S.W.3d 731, 742 (Tenn. 2005).