# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 18, 2012

## MARTIN LEWIS PRIVETTE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. 657-2011     Dee David Gay, Judge**

---

**No. M2011-02640-CCA-R3-PC - Filed December 11, 2012**

---

The Petitioner, Martin Lewis Privette, appeals the Sumner County Criminal Court's denial of his petition for post-conviction relief from his 2011 conviction for incest and his four-year sentence. On appeal, the Petitioner contends that the trial court applied an impermissible legal standard in determining whether he received the effective assistance of counsel when entering his guilty plea. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Martin Lewis Privette.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; L. Ray Whitley, District Attorney General; and Bryna L. Grant, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to the prosecutor's recitation of the facts at the guilty plea hearing on March 3, 2011, a Gallatin Police Department investigator interviewed the victim, the Petitioner's adopted daughter, who said she was drinking at the Petitioner's home. She said that they began to have sex but that she told him to stop. The victim took the Petitioner's car keys and went to Michael Harris's home for the night. The next morning, the Petitioner "knocked down [Mr. Harris's] door, busted it open" and demanded his car keys. The victim gave the Petitioner his car keys, and he left.

The Petitioner pleaded guilty to vandalism, aggravated criminal trespass, and incest and was sentenced to four years, suspended to time served, and placed on probation. A probation violation warrant was served on the Petitioner on March 23, 2011, and the State retired the warrant on May 13, 2011. A second probation violation warrant was served on the Petitioner around August 12, 2011, after it was discovered that he had Internet access. The probation revocation hearing and the hearing on the post-conviction petition took place on October 3, 2011.

The Petitioner testified that counsel did not review all the consequences of the specialized probation conditions for sex offenders. He said that he did not sign the specialized probation conditions before entering his plea and that he would not have pleaded guilty if he had known of the special conditions for sex offenders. He said he did not discuss with counsel the problems he would have with the special conditions, specifically the condition requiring that he not be within one hundred feet of the victim's home, until after he violated the conditions.

On cross-examination, the Petitioner testified that the requirements of his probation were not explained to him. He said that it was a "total shock" that he was required to wear a G.P.S. monitor and that he did not know how he could take care of his daughter without being able to communicate with her. He said that he initially had other counsel, that original counsel requested the State's discovery, and that they discussed the additional charges that might arise from the discovery. He said that one week before completing probation for a driving under the influence (DUI) conviction, he violated his probation by incurring misdemeanor charges and went to jail for the violation. He stated that he did not remember discussing the incest charge with original counsel but that when he was released from jail on the probation violation, he hired new counsel. He said that he met with new counsel after receiving the State's discovery and that new counsel reviewed the State's plea offer with him.

During the hearing, the prosecutor showed the Petitioner the Petition for Waiver of a Trial by Jury that he signed and directed his attention to the second page where an "X" appeared beside "Sexual Offenses" and "Registration as a Sex Offender." The Petitioner stated that he did not understand these terms or the "MRT Program" that was also marked on his petition. He said that he did not ask questions at the guilty plea hearing because he was nervous and trying to understand the proceeding. He said he did not remember seeing the sex offender requirements on the petition.

The Petitioner testified that there were a number of continuances from the original setting until the Petitioner's entering his plea in March 2011. He said that he only remembered three meetings with counsel and that he did not receive the State's offer until

his hearing on March 3, 2011. He said that the four-year offer was the only offer he received and that he thought he "could deal with that." The State showed that the offer had been faxed to counsel on February 2, 2011, but the Petitioner said he did not discuss it with counsel when he came to court on February 3. He said he accepted the offer on March 3 with no previous discussions with counsel because he wanted to avoid jail time. He said that he had never heard of the sexual offender registry and that he signed the second page of the Petition for Waiver of a Trial by Jury without reading it.

The Petitioner testified that he met with Lora Lisk at the probation department shortly after he entered his guilty plea. He said that he reviewed the specialized probation conditions for sex offenders, that none of those conditions were waived by the court on the form, and that he signed the conditions. He said that he did not know all the special conditions were part of his plea when he entered it and that he was confused. He thought because he had already entered his guilty plea that he had to complete everything listed and that he did not have a choice.

The Petitioner testified that he was arrested for violating the special probation conditions for sex offenders and that he hired counsel to represent him at the probation revocation hearing. He said that he appeared in the trial court for his plea hearing, for a bond issue with the probation violation, and for his first probation revocation hearing and that he did not discuss his confusion with the court at any of these hearings because he did not know there was "any such thing as Post-Conviction Relief" until he hired current counsel. He said he did not discuss with counsel his confusion about the requirements of being on the sexual offender registry between the time he was arrested for violating his probation in March and the time the State retired his first probation violation in May. He said that Ms. Lisk made his duties and responsibilities clear but that at the time he entered his plea, he did not understand those were conditions of his plea agreement.

The Petitioner testified that he graduated from high school and attended Florida State University for two years. He said that he worked as a licensed electrician but that he did not receive special training to obtain his license. He said he learned how to be an electrician by watching others.

Upon questioning by the trial court, the Petitioner testified that he had no prior experience in criminal court until he was convicted of DUI. He said that he met with counsel three times and that they discussed the possibility of negotiating with the State but were moving forward with trial preparations. He said each meeting with counsel was at counsel's office and lasted between twenty and thirty minutes. He said that at the third meeting, they were still waiting on a final offer from the State but that he did not remember if an offer was

made before the third meeting. He said he did not remember an offer being communicated to him during his last meeting with counsel.

The Petitioner testified that he came to court for his plea hearing without an offer and that he met with counsel in the hallway before his hearing to discuss the offer. He said he heard the offer was for probation, which was important to him because he did not want to go to jail. He said he understood that if his plea was set aside, the possibility of confinement upon conviction was likely. He said that he understood his plea to be four years of state probation but that he did not know the "parameters" of the probation.

The Petitioner testified that he did not ask counsel about the parameters of his probation. When questioned if it was his fault for not asking, the Petitioner said that he hired counsel to explain things to him. He stated he assumed everything was written on the petition he signed. When directed to the petition where the registration requirement was written and marked, the Petitioner said that he did not ask about it and that he did not remember seeing it. He admitted it was his fault for not asking counsel what he was signing.

After being shown the Specialized Probation Conditions for Sex Offenders that he signed on March 9, 2011, the Petitioner said that he remembered seeing and signing the paper but that he did not remember reviewing the specific parts. He said the probation officer reviewed the condition requiring that he not have Internet access on any computer or device, that he expressed concern with this condition because he needed Internet access to maintain his business, and that he contacted counsel to discuss objecting to the condition. He said he consented to the search of his electronic devices at any time. He said that his violation of the no Internet condition was the reason he was in jail at the time of the post-conviction hearing and that he no longer used the Internet. He said that he did not have Internet access but that his girlfriend, who lived with him, had Internet access, which violated the condition. He said no one pursued his objection to the no Internet condition.

The Petitioner testified that when he reviewed the probation conditions with Ms. Lisk, he did not object to the conditions requiring that he not buy or possess pornographic materials, that he attend treatment as directed, that he not use alcoholic beverages or other mind-altering substances, that he submit to polygraph examinations, or that he live only in a residence approved by his probation officer. He said that he read and did not object to the condition that he register as a sex offender but that he did not know what it was and did not ask. He said that he read the condition requiring that he not have any contact with the victim and that he was arrested on a prior occasion for violating this condition. He agreed the court told him he could contact the victim by phone only if it were necessary, supervised, and approved by his probation officer. He said that he remembered reading the condition that he not work, volunteer, or go to places frequented by children and that he questioned why he

could not go to malls. He said that he did not object to the monitoring condition when he reviewed the list but that he objected to it after it was enforced through G.P.S. monitoring because he did not know it was part of his plea.

The Petitioner testified that he did not think it was his responsibility to review the rules of probation and that he thought it was the judge's responsibility to advise him. He said he did not think the trial court reviewed the probation requirements with him at his plea hearing because the sexual offender registry requirement and other directives were not attached when he entered his plea. He said he wanted to begin the process over, have a jury trial, and possibly go to jail. He stated that he depended on counsel to help him understand his plea and that if he had known about the conditions of supervision, he would not have pleaded guilty.

On recross-examination, the Petitioner testified that he had been in court for theft, for DUI, and for domestic assault. He admitted that he had been on probation previously and had taken an "MRT" class. He said that he did not know the "MRT" class was going to be part of his probation for the current offense.

The Petitioner testified that he had been on probation three times. He said that he knew there were certain conditions on probation and that he took classes during his previous probations. He said that he misunderstood the requirement of sexual offender registration, that he did not understand the depth of it, and that he would not have entered his plea if he had known the registry was required.

Counsel testified that he had practiced law for thirty-one years and that the Petitioner hired him in November or December 2010. He said he received a copy of the State's discovery that was provided to original counsel. He said that he received a faxed, two-page offer titled the State's Petition for Waiver of a Trial by Jury on February 2, 2011. He said that the Petitioner signed this offer, unaltered, on March 3, 2011, before the plea hearing. He said that his calendar showed scheduled appointments with the Petitioner on February 4 and February 15 but that he had no way of knowing if he actually met with the Petitioner on those days, only that the meetings were scheduled. He stated that the Petitioner's February 3 court appearance was continued but that he did not know the reason. He said that when he received an offer, he normally scheduled a meeting with the client to review it. He said that he reviewed the evidence and discussed the possibility of going to trial with the Petitioner. He did not recall reviewing the offer with the Petitioner, but he assumed that if the Petitioner came to his office on February 4 or 15, they would have reviewed the offer.

Counsel testified that he remembered discussing the sexual offender registry with the Petitioner. He said that the Petitioner scheduled a meeting with him on March 15, 2011, and

that the Petitioner told him that more was required under his probation than the Petitioner had expected. He said the Petitioner was concerned with the probation condition requiring that he have no contact with the victim because she lived in his home. Counsel contacted the district attorney's office with the Petitioner's concerns. He remembered that the Petitioner was prohibited from having contact with the victim under his probation conditions but that there was discussion during the plea hearing that the Petitioner could have contact with the victim at her discretion.

Counsel testified that he represented the Petitioner at the first probation violation hearing. He said he could not imagine he would not have told the Petitioner that he was required to register as a sex offender. He said that although he was sure he told the Petitioner that he would be required to register as a sex offender, he probably did not review all the sex offender directives. He said he remembered reviewing the proof, discussing probation, and talking about the sexual offender registry with the Petitioner but that he did not remember his or the Petitioner's statements during the discussion.

Counsel testified that he represented the Petitioner at a bond hearing on March 31, 2011. He said the Petitioner testified at the bond hearing that he needed to have contact with the victim because she lived at a home he owned and needed to maintain. He said that the conditions were modified after the bond hearing and that at the revocation hearing in May, the State retired the first probation violation and permanently modified the contact conditions. He said he did not remember the Petitioner's asking questions or raising objections to any condition other than the condition prohibiting contact with the victim.

On cross-examination, counsel testified that he had a lot of experience in representing criminal defendants and that he knew probation for sex offenders was different than standard probation. He said that he did not have any specific recollection of going over all the special conditions required of the Petitioner but that he was sure he talked to the Petitioner about registering as a sex offender. He said the Petitioner raised concerns about the special conditions on March 15, 2011, after the meeting with Ms. Lisk.

Upon the trial court's questioning, counsel testified that of the thirty-one years he had practiced law, probably eighty percent of that practice had been criminal law. He said that he had many clients who pleaded guilty, including clients who pleaded guilty to charges involving registration as a sex offender. He said that when he had clients who were going to be placed on the registry, he explained to them what the registry was and discussed the condition restricting Internet access because of the Internet's importance in today's world. He said that he informed his clients that probation with special sex offender directives was stringent. He said that in the future, he would probably go over the special sex offender directives, which he doubted he did in this case. He stated that he "probably didn't do as

good a job as [he] should have" in giving advice on probation in this case but that he followed his usual practice.

Counsel testified that his calendar showed appointments with the Petitioner on five days, including February 4 and February 15, and that because those two days were between the time he received the State's offer and the Petitioner's plea hearing on March 3, he assumed he reviewed the offer with the Petitioner at one of those meetings. He said he did not recall or have notes in his file to confirm that he met with the Petitioner, only the scheduled appointments on his calendar. He said the Petitioner did not hesitate in entering his plea. He said he reviewed with the Petitioner the plea forms and the rights the Petitioner waived by entering his guilty plea before the plea hearing.

The court gave counsel a copy of the plea form to review. Counsel testified that he reviewed with the Petitioner the front page of the form that listed the offenses to which the Petitioner pleaded guilty, the four-year sentence suspended to time served, and the four-year probationary term. He said he also reviewed the other side of the form that required the Petitioner to undergo the "LSI" evaluation, attend the "MRT" program, register as a sex offender, and pay a $200 fine per count.

In denying the petition for post-conviction relief, the trial court concluded that the Petitioner's guilty plea was "knowingly, voluntarily, and intelligently made based on the overwhelming proof at the evidentiary hearing." The court stated that "the record is clear that the [Petitioner] was made aware that he would be subject to the provisions of the sexual offender registry or the specific requirement that he must register as a sex offender." The court found the Petitioner's statement that he would not have entered his guilty plea had he known about the probation requirements "very unreliable" and credited the testimony of counsel that he advised the Petitioner of the general sexual offender registry requirements. The court was satisfied that the Petitioner knew the general conditions of his probation when he entered his guilty plea.

The trial court also concluded that the Petitioner received the effective assistance of counsel and that the "guilty plea was exactly what the Petitioner desired to do." The court noted that it placed "great weight on the credibility" of counsel and that counsel's testimony was supported by the plea hearing transcript and the signed copy of the Petition for Waiver of Trial by Jury. The court found that the Petitioner was satisfied with the services of his attorney when he entered his guilty plea and that he hired the same counsel to represent him at his first probation revocation hearing. The court found that the Petitioner did not pursue post-conviction relief until after the second probation violation warrant was issued and that he did not prove his allegations by clear and convincing evidence.

# I

As a preliminary matter, the State argues that the Petitioner has waived his claims on appeal by failing to provide this court with a complete record because the Petitioner failed to include a transcript of the probation officer's testimony even though the record reflects that the trial court relied upon it in denying relief. The Petitioner, as the appellant, has the burden to provide an adequate record for appellate review. T.R.A.P. 24(b); State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). Generally, when the record is incomplete with respect to a challenged issue, this court cannot determine whether the trial court correctly rejected the petitioner's claims and must presume that the trial court's determination was supported by the record. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App.1991) ("In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence."); see, e.g., State v. Draper, 800 S.W.2d 489, 492 (Tenn. Crim. App. 1990). In any event, the trial court's order summarized the probation officer's testimony and noted the standard it applied in denying relief. We will review the issue on the merits.

# II

The Petitioner contends that the trial court erred by "applying an impermissible legal standard regarding the [Petitioner's] understanding of the plea agreement." He argues that requiring the Petitioner to "ferret out what a plea agreement actually means, or its practical effects," is error as a matter of law. He argues that the prosecutor and defense counsel have the responsibility of ensuring defendants understand their pleas and that he did not understand the conditions of his probation. At the post-conviction hearing, the Petitioner argued that his guilty plea was unknowing, involuntary, and unintelligent because counsel was ineffective in not explaining the parameters of his probation. The State contends that the trial court properly denied the petition for post-conviction relief. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904. A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

The Petitioner was required to prove by clear and convincing evidence that counsel did not inform him of the parameters of his plea agreement. If the Petitioner established this fact, the court was then required to apply the Strickland analysis. The court determined that counsel told the Petitioner about his probation requirements and explained the sexual offender registration requirement to him. In addition, the waiver of a jury trial form signed by the Petitioner listed the requirement that the Petitioner register as a sex offender. When the trial court asked the Petitioner at the plea hearing if he had reviewed the plea petition

with his attorney, the Petitioner responded, "Yes, sir." He also stated that he was satisfied with counsel's services and that there was nothing the Petitioner wanted counsel to do that counsel had not done. Although we note "State Probation" is marked on the form, not "State Probation with Sex Offender Directives," we conclude that this is of no consequence because counsel reviewed with the Petitioner the general directives and conditions, including the condition prohibiting the Petitioner from having Internet access, and that the Petitioner reviewed the sex offender directives with his probation officer without objections.

The Petitioner argues that it is not the Petitioner's responsibility to research the "practical effects" of his plea agreement and that the court applied an incorrect standard when it asked the Petitioner whose fault it was that he did not understand his probation. The court, though, in its written order, found that counsel reviewed with the Petitioner the general directives and conditions of the plea agreement, not that the Petitioner should have discovered them. The court found that the Petitioner "was made aware that he would be subject to the provisions of the sexual offender registry" in his written plea agreement and at the plea hearing and that counsel advised the Petitioner of the "general sexual offender registry requirements." The court concluded that the Petitioner "knew the general conditions of his probation when he entered his guilty plea." The Petitioner also reviewed and signed the sex offender directives with his probation officer and made no objection to the court until after he violated them. We note that the Petitioner had previously been on probation, that the requirement to register was marked on the form signed by the Petitioner, and that he signed the form before entering his plea. We conclude that the trial court did not apply an incorrect standard but determined that the Petitioner did not prove counsel erred by clear and convincing evidence.

The Petitioner is misguided in his argument that Calvert v. State, 342 S.W.3d 477 (Tenn. 2011), and State v. Nagele, 353 S.W.3d 112 (Tenn. 2011), afford him relief. In both cases, the petitioners were granted post-conviction relief after the court determined they were not advised before they pleaded guilty that they faced mandatory lifetime community supervision sentences. In Tennessee, the imposition of community supervision for life is required by statute and is in addition to the punishment received for the commission of certain sexual offenses. See T.C.A. § 39-13-524 (2010) (amended 2012). "[L]ifetime community supervision is a direct and punitive consequence of which a defendant must be informed in order to enter a knowing and voluntary guilty plea." Ward v. State, 315 S.W.3d 461, 475 (Tenn. 2010). Counsel's "failure to advise his or her client about the mandatory lifetime community supervision sentence . . . is deficient performance." Calvert, 342 S.W.3d at 490. Our supreme court held, though, that "the registration requirements imposed by the sexual offender registration act are nonpunitive and that they are therefore a collateral consequence of a guilty plea." Ward, 315 S.W.3d at 472. Although the trial court must inform a defendant of lifetime supervision before the defendant enters his guilty plea, the

trial court's failure to advise a defendant of the sexual offender registration requirement does not render his guilty plea constitutionally invalid. Id. at 472, 476. Any failure by the court or counsel to explain fully the sexual offender registry to the Petitioner does not render his guilty plea invalid.

In the present case, the trial court rejected the Petitioner's assertion that he was unaware of the requirement that he register as a sex offender and credited counsel's testimony that he reviewed the general registry requirements and the general directives and conditions with the Petitioner. The court also found that the Petitioner's assertion that he would not have pleaded guilty had he known the parameters of his probation was "very unreliable." The court concluded that the Petitioner did not prove his allegations of ineffective assistance of counsel by clear and convincing evidence. The evidence does not preponderate against the trial court's factual findings.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____

JOSEPH M. TIPTON, PRESIDING JUDGE