IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 17, 2016 Session

**STATE OF TENNESSEE v. TRAVIS DEWAYNE GIPSON**

**Appeal from the Circuit Court for Blount County**
**Nos. CC22017, CC22018     Tammy Harrington, Judge**

_____

**No. E2015-01273-CCA-R3-CD – Filed August 19, 2016**

_____

The defendant, Travis Dewayne Gipson, appeals the denial of his motion to withdraw the guilty pleas he entered to two counts of the delivery of cocaine. Because the defendant failed to establish a manifest injustice requiring that he be allowed to withdraw his pleas, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and D. KELLY THOMAS, JR., J., joined.

Jackson Whetsel, Knoxville, Tennessee, for the appellant, Travis Dewayne Gipson.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Mike Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 2, 2014, the defendant entered pleas of guilty to two counts of the delivery of more than .5 grams of cocaine in a drug-free zone in exchange for concurrent sentences of 20 years, with 12 years to be served at 100 percent. As part of the plea agreement, the State agreed to dismiss a third charge of the delivery of more than .5 grams of cocaine in a drug-free zone, the sentence for which would have been aligned consecutively by operation of law.

On June 11, 2014, only nine days later, the defendant, by counsel, moved the court pursuant to Tennessee Rule of Criminal Procedure 32(f)(2) to allow him to withdraw his guilty pleas. On July 14, 2014, the defendant moved the court pro se for permission to withdraw his pleas, arguing that he had been pressured and coerced by his

trial counsel into accepting the plea agreement. He claimed that his trial counsel had colluded with the assistant district attorney to force him to enter the guilty pleas. At some point, trial counsel was allowed to withdraw from the case, and new counsel was appointed to represent the defendant.

At the June 5, 2015 hearing on the defendant's motions, the prosecutor summarized the history of the cases and the details of the defendant's crimes, noting that the defendant, who had originally been charged in case numbers 22016, 22017, and 22018 with the sale or delivery of more than .5 grams of cocaine in a drug free zone, was a Range II offender who faced a sentencing range of 12 to 20 years on each count, which would be served at 100 percent by operation of law. Additionally, because the defendant committed one of the offenses while on bond for another, the law mandated consecutive alignment, making the defendant's total potential exposure, should he be found guilty at trial, 40 years at 100 percent. The prosecutor explained

> The basis of this matter is that the [d]efendant had been arrested on 9/18 in [case number 22016]. He had been released on bond. Three days later, he sells in [case number 22017] or [case number 22018]. The numbers may be reversed, but three days later he sells. And another three days later, he sells. . . .
>
> The [d]efendant then gets out on bond in all three of these charges later on and in this process he then goes and he is charged with possession of cocaine greater than /5 grams in a school zone in Knoxville.

The prosecutor maintained that "his potential exposure both here in Blount County and in Knox County as well" was made clear to the defendant prior to his pleading guilty.

The defendant testified that trial counsel was appointed to represent him in two of his cases and that another attorney ("private counsel") was appointed to represent him in the third Blount County case because "[t]here was a conflict with [the public defender's office] or something." The defendant said that he was originally represented by one attorney from the public defender's office ("original counsel") in the general sessions court, but that original counsel was replaced by trial counsel, who was also an assistant public defender. Trial counsel conducted the preliminary hearing in general sessions court. The defendant speculated that trial counsel replaced original counsel because of a heated exchange the defendant had with original counsel. He said,

[I]t was something other about he brought me some still frames trying to get me to plead out to the crime. And it got heated to where Gallegos called us up to the desk an – it was a major conflict going on in the courtroom about him trying to force me to take a plea that I didn't want to take.

When the three cases progressed to circuit court, trial counsel represented the defendant in case numbers 22017 and 22018 while private counsel represented the defendant in case number 22016. The defendant described his relationship with trial counsel as "okay up to the last minute." He said that trial counsel initially supported his desire to go to trial, but then, on the day prior to his scheduled trial date, trial counsel "hammered" him to accept the plea agreement offered by the State. The defendant said that trial counsel told him that trial counsel had observed the confidential informant testify during the trial of another man and that the testimony had been very credible.

The trial court confirmed that trial counsel was present during the other trial and that counsel had told the court that he was observing the trial because "it was the same confidential informant on [the defendant's] case." The defendant maintained that this information "didn't mean nothing to" him.

Upon questioning by the trial court, the defendant confirmed that the court had allowed him to make a telephone call during the plea negotiations. The defendant testified that he telephoned his grandmother, who told him not to accept the plea offer. He, in turn, told counsel that he wanted to go to trial, explaining, "I said, I'm not taking the plea, I'll appeal it, hear what I'm saying. And when I said I'll appeal it, he said, what appeal. And then that right there made me believe I didn't have no appeal." The defendant said that it was at that point that he decided to accept the plea offer and plead guilty, saying, "I guess I made my mind up right after – after I realized I didn't have no plea (sic)."

He insisted that while the trial court conducted the Rule 11 colloquy, he "didn't answer directly" and that he did not "even remember all them questions." The defendant said that he "was not in [his] right frame of mind" during the plea colloquy because he "lost [his] train of focus" after trial counsel told him that he "didn't have no appeal." He also maintained that he did not recall any of the guilty plea submission hearing.

During cross-examination, the defendant acknowledged that trial counsel had informed him that he was charged in three different cases with delivery of more than .5 grams of cocaine within a drug-free zone and that all previous plea offers had required that he plead guilty to all three charges. The defendant rejected each of these offers. He

-3-

also acknowledged that trial counsel told him that any potential sentence for the third offense would have to be served consecutively because he committed the third offense while on bond for the first. He agreed that the State had dismissed the charge in case number 22016 as part of the plea agreement. The defendant conceded that he answered each of the questions posed by the trial court during the plea colloquy and that he asked questions that were answered by the court. He insisted, however, that he "was not in the right frame of mind."

Records establishing the defendant's school and mental health treatment history were exhibited to the hearing by stipulation. Those records established that the defendant, despite suffering from a variety of mental health disorders, was competent to stand trial.

Trial counsel testified that the public defender's office was initially appointed to represent the defendant in the general sessions court and that he began representing the defendant while the case was still in general sessions court. He said that original counsel "may have spoken with [the petitioner] a time or two" before trial counsel "took over the case when [trial counsel] moved on to that docket." He recalled that the defendant had one charge "out of Alcoa," on which he was represented by private counsel. He said that private counsel had been appointed to represent the defendant in the Alcoa case because the public defender's office "had a conflict due to the fact of the co-defendant." He said that, in particular, the defendant did not want to plead guilty to the Alcoa charge, which would have carried a mandatory consecutive sentence. Trial counsel testified that based upon his discussions with the defendant and private counsel, the defendant "believed he had a defense" to that charge.

As part of his trial preparation, trial counsel attended the trial of Michael Hall, which trial centered on the testimony of the same confidential informant as in the defendant's case. Private counsel represented Mr. Hall during that trial. Mr. Hall was convicted on the basis of the informant's testimony and sentenced to 30 years to be served at 100 percent. He said that his relationship with private counsel was beneficial because "she had the same informant, kind of the same issues."

Trial counsel recalled that he reviewed the video recordings of the controlled buys as well as still photographs. He said that the photographs, video recordings, and audio recordings were consistent with the defendant's voice and appearance.

Counsel said that he was worried about the defendant's overall sentencing exposure, explaining that the defendant "would have been looking at 50 or 60 years . . . at a minimum of a hundred percent." When the State agreed to dismiss the Alcoa case in

-4-

exchange for the defendant's plea in the other two Blount County cases, counsel "considered that pretty big." He communicated the offer to the defendant the day before trial. The defendant asked to make a telephone call, and the trial court obliged. When he could not reach his wife, the defendant telephoned another family member. After speaking with that family member, the defendant asked trial counsel to show him the still photographs. After looking at the photographs, the defendant indicated that he wanted to accept the State's offer and plead guilty.

Trial counsel said that he never had any reason to doubt the defendant's ability to understand the charges against him or the guilty plea process. He denied having told the petitioner that if he went to trial he would not have the right to appeal. He said that he had heard "with regard to other cases" that "that was something that was going on in the jail at the time about appeals and – no, it was never a conversation that I had with him." Trial counsel said that he received a letter from the defendant "three or four days after" the guilty pleas indicating that he wanted to withdraw the pleas. Trial counsel filed a motion on the defendant's behalf and then filed a motion to withdraw from the case after the defendant filed a pro se motion to withdraw his pleas that included a claim of ineffective assistance of counsel.

Trial counsel recalled that before the plea colloquy, the trial court allowed the parties to come into the courtroom to discuss the case. The trial court allowed counsel to relay the offer to the defendant face-to-face in a virtually empty courtroom. The court also allowed the defendant to telephone his loved ones. He said that the environment was not chaotic.

During cross-examination, trial counsel said that he came to represent the defendant in the general sessions court "during a transition where [original counsel] was being transitioned to another docket." He explained, "[F]requently our office will . . . change up our docket schedules every two, three, four years . . . . Our boss lets us do that and changes stuff up. That's the only reason." He said that he was not aware of any incident that took place between the defendant and original counsel.

At the conclusion of the hearing, the trial court concluded that "the proof just didn't develop as far as the record is concerned that there was any conflict of interest with [trial counsel]'s representation that would have resulted in manifest injustice." The court also found that trial counsel had fully prepared for trial prior to relaying the plea offer to the defendant. The trial court determined that the doctor who conducted the forensic evaluation of the defendant found the defendant competent to enter the guilty pleas and that the transcript of the plea colloquy evinced that the pleas were knowingly, intelligently, and voluntarily entered. The court denied the defendant's motion.

In this timely appeal, the defendant contends that the trial court erred by denying his motion to withdraw his guilty pleas, arguing that he was deprived of the right to the effective assistance of counsel and that this deprivation resulted in his guilty pleas being unknowingly and involuntarily entered. Specifically, he claims that his heated exchange with original counsel resulted in a conflict of interest for the entire public defender's office and that someone other than trial counsel should have been appointed to represent him. He also argues that case numbers 22016, 22017, and 22018 should not have been negotiated together because the public defender's office had a conflict of interest in case number 22016 that necessitated the appointment of private counsel. Finally, he claims that trial counsel's telling him that he had no right to appeal rendered his guilty pleas unknowing and involuntary. The State contends that the trial court did not err by denying the defendant's motion.

The decision whether to permit a defendant to withdraw his plea "is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed." *State v. Crowe*, 168 S .W.3d 731, 740 (Tenn. 2005); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). Consequently, this court reviews "a trial court's disposition of a defendant's motion to withdraw his or her plea of guilty for an abuse of discretion." *Phelps*, 329 S.W.3d at 443 (citing *Crowe*, 168 S.W.3d at 740). A reviewing court will find an abuse of discretion when the trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party," *Phelps*, 329 S.W.3d at 443 (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010), and "when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue," *Phelps*, 329 S.W.3d at 443 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

A guilty-pleading defendant "does not have a unilateral right to later withdraw his plea either before or after sentencing," and, in consequence, "bears the burden of establishing sufficient grounds for withdrawing his plea." *Phelps*, 329 S.W.3d at 444.

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that, "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). The term "manifest injustice" is not defined either in the rule or in those cases in which the rule has been applied; instead, trial courts and appellate courts must determine whether manifest injustice exists on a case by case basis. *See Crowe*, 168 S.W.3d at 741-42 (recognizing absence of definition for manifest injustice and citing examples of circumstances warranting withdrawal); *State*

-6-

*v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). When determining whether the defendant should be permitted to withdraw his guilty plea to correct a manifest injustice, a court must scrutinize carefully the circumstances under which the trial court accepted the plea. An analysis of the plea submission process under Tennessee Rule of Criminal Procedure 11(b) facilitates an inquiry into the existence of manifest injustice. *See generally State v. McClintock*, 732 S.W.2d 268 (Tenn. 1987) (for rules concerning acceptance of guilty pleas); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) (same). Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice when

> (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (citations omitted). Courts have also found that manifest injustice resulted from the trial court's failure to advise a defendant of the appropriate sentencing range, to apply the appropriate sentencing statute, or to inform a defendant of the consequences flowing from the guilty plea. *See generally State v. Nagele*, 353 S.W.3d 112 (Tenn. 2011). A guilty plea, however, should not be withdrawn merely because the defendant has had a change of heart, *Crowe*, 168 S.W.3d at 743; *see also Ray v. State*, 451 S.W.2d 854, 856 (Tenn. 1970), nor should a defendant's dissatisfaction with an unexpectedly harsh sentence be sufficient justification for a withdrawal, *Crowe*, 168 S.W.3d at 743; *see also Clenny v. State*, 576 S.W.2d 12, 15 (Tenn. Crim. App. 1978).

In our view, the trial court did not abuse its discretion by denying the defendant's motion. Although the defendant claimed that trial counsel was operating under a conflict of interests, we must agree with the trial court that the evidence in the record does not support such an assertion. The defendant stated that it was his belief that his heated exchange with original counsel had led to trial counsel's being appointed to represent him, but trial counsel testified that he was not aware of any such exchange and that he came to represent the defendant only after original counsel was assigned to a different docket. That the public defender's office had a conflict of interests in case number 22016 did not necessarily prevent private counsel and original counsel from working together to negotiate a global plea agreement. Moreover, the evidence adduced at the hearing did not establish the nature of the conflict of interests. Private counsel did

not testify, and it is not clear from the remainder of the proof the degree to which trial counsel and original counsel shared privileged information about the three cases. Case number 22016 was dismissed as part of the plea agreement. Finally, the trial court implicitly accredited counsel's testimony that he did not tell the defendant that he would forfeit the right to an appeal if he proceeded to trial. The record supports the trial court's conclusions that the defendant was competent to enter the guilty pleas and that he did so knowingly, voluntarily, and intelligently.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE