# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs on September 9, 2014

## BRUCE RISHTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sequatchie County**
**No. 13-CV-68      Thomas W. Graham, Judge**

---

### No. M2013-02817-CCA-R3-HC - Filed September 26, 2014

---

The Petitioner, Bruce Rishton, appeals the Sequatchie County summary dismissal of his petition for habeas corpus relief. He contends that the trial court's failure to inform him of the "direct and punitive consequences" of his accepting a guilty plea requiring community supervision for life renders his guilty plea void and that habeas corpus relief should have been granted. Upon consideration of the record and the applicable authorities, we affirm the judgment of the habeas corpus court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Bruce Rishton, Dunlap, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie Price, Senior Counsel, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On March 15, 2006, the Petitioner was indicted for the rape of his sister-in-law, T.C., case number S51,181, and multiple sexual acts against his minor adopted daughter, H.R., case number S51,180. On November 6, 2006, the Petitioner entered "best interest" guilty pleas in case number S51,181 to one count of attempted rape, a Class C felony, and in case number S51,180 to five counts of incest and five counts of attempted rape, Class C felonies. At the guilty plea hearing, the prosecutor recited the following factual basis for the pleas:

> If we had proceeded to trial in Case No. S51,181 the State would have

[presented] the following evidence. On August 29, 2005 the victim, [T.C.], who is an adult individual and she is also the [Petitioner's] sister-in-law, was staying with the [Petitioner] and her sister, . . . , in Sullivan County, Tennessee. She had young children there with her . . . at the [Petitioner's] residence. She would state that she woke up from a dead sleep with the [Petitioner] lying either on her or beside her with her pants down digitally penetrating her vagina. [T.C.] would give a history of prior sexual assaults with this [Petitioner], should it become relevant, reaching back into her minority when she lived with [her sister] and [the Petitioner] and their children. She would state that she did not give her consent and was awakened to an offense already committed. She immediately told her sister. She immediately called the police. This was immediately turned over.

As to [Case No.] S51,180, the parties would stipulate that the offenses occurred on the dates as alleged in the indictments or presentments. The victim is [H.R.]. Her date of birth was August 28th, 1989. After [T.C.] came forward with her abuse within about a 24 hour period [H.R.] also told her mother that this had been also happening to her for some period of time. [H.R.] would go on to tell authorities that her abuse began in another jurisdiction back in the year 2000 and continued until the August 29th date when [T.C.] came forward.

[H.R.] . . . gave details, although many more offenses occurred than the State has charged. The State took a diary and worked around significant dates in [H.R.'s] life to come up with the dates that we ultimately used. All of those events occurred either in the home in Sullivan County or in, by the lake in Sullivan County and the earlier abuse, as I stated, occurred not only in Washington County, Tennessee but in another [s]tate that has been referred to, other jurisdictions, and that we do not know what they will do in those cases.

[H.R.] was also able to tell us that during the events which would occur at her home on every occasion the [Petitioner], who was her father, would have her watch pornographic movies. She described in detail to us some of those specific movies. The State, various pornographic . . . movies, in fact a whole box full of them, were recovered from the home and turned over to officers and on those tapes are the events or the scenes that [H.R.] would describe.

[H.R.] would state that she did not want to have sexual penetration and this would either be digital, oral or attempted penile penetration either on her or on him in each case; that . . . it began when she was a young child and continuing until the present day, . . . that she would not be able to go out, she

would not be able to leave the house, she could not see her friends, she could not have a boyfriend or he would be mean to her family if she refused his sexual advances, that her life would have been, was made very difficult.

She did go to have a physical—the child is, although fully capable of testifying, is highly emotionally traumatized by the events and when we took her for the medical [examination] . . . the doctor, without putting her to sleep, could not conduct a full pelvic exam but what she was able to see was very suspicious and did show some tiny tearing of the hymenal ring. But she just could not go further than that without putting the child under to complete the exam.

Bruce S. Rishton v. State, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *1-2, (Tenn. Crim. App. May 21, 2012), perm. app. denied, (Tenn. Aug. 15, 2012). Prior to accepting the pleas, the trial court went over each offense to which the Petitioner was pleading and asked the Petitioner if he understood the terms of the agreement. Specifically regarding the community supervision for life requirement, the following exchange took place:

The Court:          And then you're going to be under community supervision for life. Now is that your understanding of the plea agreement?

[The Petitioner]:     Yes, Your Honor.

The Petitioner also stated during the hearing that he had discussed the plea agreement with his attorney and believed that it was in his best interest to plead guilty. After informing the Petitioner of the rights he was waiving, the trial court accepted the Petitioner's plea. The trial court sentenced the Petitioner to a total effective sentence of ten years as a Range II, multiple offender.

The Petitioner later filed a timely post-conviction petition, raising multiple issues, that was ultimately denied by the post-conviction court, and that denial was affirmed on appeal to this court. See id. at *1. He then filed a petition for habeas corpus relief alleging as follows:

Petitioner's plea is void due to the trial court's failure to adequately explain the consequences of the additional sentence of Community Supervision for Life during the plea colloquy as mandated by Tenn. R. Crim. P. 11(b)(1)(B) and (G), and ***Ward v. State, 315 S.W.3d 461 (Tenn. 2010)***[.] .

. .

Petitioner's plea is void because neither the Board of Probation and Parole nor the Tennessee Department of Correction is authorized to set the punishment for crimes or to determine the elements of a crime. ***Tenn. Const. Art. II, Section 3***.

The petition was summarily dismissed, and the Petitioner appealed that dismissal to this court.

ANALYSIS

The Petitioner contends that the trial court's failure to inform him of the "direct and punitive consequences" of his accepting a guilty plea requiring community supervision for life renders his guilty plea void and that the habeas corpus court erred in summarily dismissing his petition for relief. The State responds that the habeas court properly dismissed the petition because the Petitioner failed to show any illegality on the face of the judgments; each judgment for attempted rape properly reflected that the Petitioner received community supervision for life. Further, the State responds that any argument that he was inadequately advised regarding the community supervision for life requirement is not cognizable in a habeas corpus proceeding. We agree with the State.

The determination of whether to grant habeas corpus relief is a question of law, and our review is de novo. Summers v. State, 212 S.W.3d 251, 262 (Tenn. 2007). The Tennessee Constitution guarantees a convicted criminal defendant the right to seek habeas corpus relief. Tenn. Const. art. I, § 15. However, the "grounds upon which habeas corpus relief may be granted are very narrow." Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). The writ will issue only where the petitioner has established: (1) a lack of jurisdiction for the order of confinement on the face of the judgment or in the record on which the judgment was rendered; or (2) that he is otherwise entitled to immediate release because of the expiration of his sentence. See State v. Ritchie, 20 S.W.3d 624, 630 (Tenn. 2000); Archer v. State, 851 S.W.2d 157, 189 (Tenn. 1993).

The purpose of the habeas corpus petition is to contest a void, not merely a voidable, judgment. State ex. rel. Newsom v. Henderson, 424 S.W.2d 186, 189 (Tenn. 1968). A void judgment is "one that is facially invalid because the court did not have the statutory authority to render such judgment." Summers, 212 S.W.3d at 256. On the other hand, a voidable judgment or sentence is one which is facially valid and which requires evidence beyond the face of the judgment or the record of the proceedings to establish its invalidity. Taylor, 995

-4-

S.W.2d at 83. A petitioner bears the burden of establishing a void judgment or illegal confinement by a preponderance of the evidence. Hogan v. Mills, 168 S.W.3d 753, 755 (Tenn. 2005). A habeas corpus court may summarily dismiss a petition without the appointment of counsel or an evidentiary hearing when the petition "fails to demonstrate that the judgment is void." Hickman v. State, 153 S.W.3d 16, 20 (Tenn. 2004); see Tenn. Code Ann. § 29-21-109; Passarella v. State, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

Tennessee Code Annotated section 39-13-524 requires a defendant convicted of certain offenses enumerated therein to receive lifetime community supervision in addition to the sentence imposed for such offenses. Our supreme court held in Ward, "[b]ecause the lifetime supervision requirement of Tennessee Code Annotated section 39-13-524 'imposes an additional set of restrictions and requirements on the offender after serving his or her entire sentence of incarceration,' and, therefore, is a direct consequence of a guilty plea, a defendant must be informed of it prior to entering a valid guilty plea to the crimes listed in the statute." State v. Nagele, 353 S.W.3d 112, 119 (Tenn. 2011)(quoting Ward v. State, 315 S.W.3d 461, 476 (Tenn. 2010).

The Petitioner argues that Ward required the trial court to inform him of the "direct and punitive consequences" of his plea prior to accepting it and that the trial court's failure to do so resulted in a "void judgment." We disagree. Ward does require that the trial court inform the Petitioner that community supervision for life requirement is a consequence of his plea. The record reflects that the trial court did in fact inform the Petitioner that he would be subject to community supervision for life and inquired as to whether such was the Petitioner's understanding of the plea agreement to which the Petitioner responded in the affirmative. Additionally, the judgments also properly reflect that the Petitioner was sentenced to lifetime community supervision. Therefore, it is for these reasons we conclude that the Petitioner has failed to show that his judgments are void, as required for habeas corpus relief.

CONCLUSION

Based upon the foregoing reasoning and authorities, we affirm the judgment of the habeas corpus court summarily dismissing the petition.

_____
D. KELLY THOMAS, JR., JUDGE