IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2018 Session

## MICHAEL BELL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 14-03437      Carolyn W. Blackett, Judge

_____

### No. W2017-00915-CCA-R3-PC

_____

The Petitioner, Michael Bell, appeals the denial of his petition for post-conviction relief. The Petitioner pled guilty to two counts of aggravated rape and two counts of aggravated robbery and received an effective sentence of twenty-one years with community supervision for life. The Petitioner sought post-conviction relief, asserting that he received ineffective assistance of counsel and that his guilty plea was not voluntarily and knowingly entered. Following a hearing, the post-conviction court denied relief. After review of the record and applicable law, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Kirk W. Stewart, Memphis, Tennessee, for the appellant, Michael Bell.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

The guilty plea agreement at issue involves two separate cases. In case number 14-03437 ("case 37"), the Petitioner was indicted on aggravated rape, aggravated robbery, aggravated burglary, and aggravated kidnapping. In case number 14-03438 ("case 38"), the Petitioner was indicted on aggravated rape, aggravated robbery, and

possessing a firearm in connection with a dangerous felony.[1]  The Petitioner entered a guilty plea to aggravated rape and aggravated robbery in each case.  Pursuant to the plea agreement, the remaining charges were dismissed, and the Petitioner was sentenced to twenty-one years for each rape charge and eight years for each robbery charge.  The sentences were ordered to run concurrently for an effective sentence of twenty-one years, and the Petitioner was required to register as a violent sex offender and be placed on lifetime community supervision upon release from custody.

## Guilty Plea Hearing

On the day the Petitioner's guilty plea was entered, he was in court for a bond reduction hearing and not for a plea hearing.  The State offered a plea agreement for both cases wherein the Petitioner would serve an effective sentence of twenty-one years at one hundred percent.  It was made clear during the hearing that if the Petitioner chose to continue with his bond reduction hearing, then the State would revoke its offer.  Trial counsel told the Petitioner that the likelihood of his bond being reduced was "slim to none," and the trial court agreed that there was little likelihood that it would reduce his bond.  The trial court then gave the Petitioner time to speak with his attorney to determine whether to continue with the bond reduction hearing or whether to accept the plea offer.  After discussing with his attorney, the Petitioner elected to accept the State's twenty-one-year offer, and the guilty plea hearing commenced.

The State offered the factual basis for the Petitioner's guilty plea in both cases.  The State asserted in case 37 that the sixty-one-year-old victim[2] arrived home to find the Petitioner in her house.  As the victim attempted to run away, the Petitioner grabbed her, demanded money, and threatened to kill her.  He held a switchblade knife against her throat and moved her back and forth between the living room and garage, searching for money.  At some point, the Petitioner punched her in the eye and knocked her down.  He pushed her over the hood of her car and put his hand down her pants.  She told him that she had an infection, and he put his finger in her vagina, pulled it out, smelled it, and said he "didn't want it anyway."  The victim was eventually able to open the garage door and ran outside screaming for help from her neighbors.  She positively identified the Petitioner as her attacker from a photographic lineup.  The Petitioner later admitted to police that he broke into the victim's home, demanded money, put his hand down her pants, and stole her cellular phone.  He did not admit to the digital penetration of the victim.

---

[1] The indictment and judgments for case 38 are not included in the appellate record.

[2] It is the policy of this court to protect the identities of the victims of sexual assault.

- 2 -

In case 38, the State asserted that a separate victim was working at a gas station with the doors locked. She heard glass shatter and saw the Petitioner standing inside with a gun in the waistband of his pants. He took money from the cash registers, setting off the "holdup alarm." The Petitioner then demanded that the victim perform oral intercourse on him, and she complied. The Petitioner told her to pull down her pants and lie on her stomach, and she again complied. After unsuccessful attempts to penetrate her anus with his penis, the Petitioner rubbed his penis on her buttocks. The Petitioner fled and was later found hiding under a vehicle. He had money from the register in his pocket, and a gun was also found under the vehicle. The victim identified the Petitioner as her attacker in a photographic lineup. The Petitioner admitted to robbing the business, and the entire incident was video recorded.

The Petitioner testified that he was twenty-two years old at the time of the plea hearing, that he had graduated from high school, and that he had some college education. He expressed an interest in "plead[ing] Alford."[3] The trial court explained that the agreement was for a plea of guilty to the facts as summarized by the State. The Petitioner also asked what community supervision for life was. The court explained:

> You can ask your attorney to explain it in more detail, but you will be supervised for life for these offenses that you've committed. You'll have to report. You'll have to do whatever they say, follow their rules for life. You understand that? … This is all part of the sentence.

The Petitioner agreed that he understood. The Petitioner then asked what voluntary meant, and after the trial court answered his question, the Petitioner asked, "Wouldn't that be me being forced if I wanted to plead Alford?" The court asked if he still wanted to plead guilty, and the Petitioner responded, "I want to plead guilty to one case but not the other." The trial court explained that the plea offer does not allow him to plead in only one of the cases and again asked if he wanted to continue with the plea. The Petitioner responded affirmatively. The trial court asked the Petitioner twice whether he was entering his plea voluntarily, to which the Petitioner answered affirmatively. The Petitioner also agreed that he was not on any drugs or medications that would prohibit or limit him from making a decision. The Petitioner then asked if he would be considered a mitigated felon, and the State responded that was not part of the deal. The trial court asked the Petitioner twice whether he had any questions for trial counsel, and the Petitioner responded, "No, ma'am." The court asked again if he wanted to go forward

---

[3] In *North Carolina v. Alford*, the United States Supreme Court held that there was no constitutional error in accepting a guilty plea where a defendant claimed innocence yet concluded that entering a guilty plea was in his best interest and where the record contained strong evidence of guilt. 400 U.S. 25, 91 (1970).

with the guilty plea, to which the Petitioner responded, "Yes, ma'am." The trial court found that the Petitioner was entering his plea knowingly and voluntarily and accepted his guilty plea.

## Post-Conviction Hearing

The Petitioner filed a post-conviction petition, which was amended following the appointment of counsel, challenging only his guilty plea to case 37.

At the post-conviction evidentiary hearing, the Petitioner's mother, Ms. Melissa Simmons, testified that she hired trial counsel to represent the Petitioner. She stated that she attended every court date except the day that he entered his guilty plea. She testified that trial counsel was only aware of one of the cases against the Petitioner until she informed trial counsel of the other case. She stated that she noticed the Petitioner had some mental or psychological difficulties and had discussed with trial counsel the possibility of having the Petitioner evaluated. She testified that the Petitioner depended on her, that she was heavily involved in his cases, and that the Petitioner had already decided to take his cases to trial. She testified that when the Petitioner was considering the original plea offer of twenty years, she told him that the decision was his to make. She testified that she received a telephone call from the Petitioner on the day he entered his guilty plea, during which he told her that he was offered a plea, and she told the Petitioner, "[D]o what you got to do."

On cross examination, Ms. Simmons stated that she was aware of the Petitioner's previous charges as both a juvenile and an adult. She was aware that the Petitioner had been evaluated for a mental impediment, and she agreed that he did not have a history of mental illness or treatment.

The Petitioner testified that he told trial counsel of his innocence in case 37 and that trial counsel "just shook [him] off." He testified that the State told him its initial plea offer of twenty years was its final offer and that he decided he wanted a jury trial instead. He did not learn about the twenty-one-year offer until he arrived at court for his bond reduction hearing. He explained that he never wanted to plead guilty in case 37 and that nobody ever explained to him what an *Alford* plea was. He stated that he believed an *Alford* plea "was …that I didn't want to plead guilty … but I didn't want to continue going to trial." The Petitioner also testified that he had believed the trial court, not the prosecutor, determined whether he would be sentenced as a mitigated offender. He testified that he was diagnosed with bipolar disorder and schizophrenia and had been taking medications throughout his incarceration. He stated that he informed trial counsel about his medications, that trial counsel "never did anything about it," and that the only

help he received from trial counsel was trial counsel's recommendation to accept a plea deal.

The Petitioner testified that he did not know what lifetime community supervision required and that trial counsel never explained it to him. He stated that he believed the only thing he had to do after serving his sentence was to register as a violent sex offender. He did not know he would have to report to anyone or "be on parole or anything." He testified that he did not talk to trial counsel after entering the plea agreement.

On cross examination, the Petitioner maintained that he did not understand the criminal system even though he had been to court for six different cases as a juvenile and for three cases as an adult. He acknowledged that he had an attorney for all of his previous cases. He agreed that he had been to court with trial counsel over twenty times prior to entering his guilty plea.

The Petitioner was later recalled to the stand to ensure he understood the implications of receiving post-conviction relief. Petitioner's counsel explained that if relief was granted, the Petitioner would not go free, he would have two separate trials, and he could receive up to 150 years of incarceration. The Petitioner testified that he understood and wanted to proceed with his post-conviction petition.

Trial counsel testified that after reviewing the discovery on case 38 and having conversations with the State, he could not recommend that the Petitioner go to trial on that case, especially in light of the video evidence that clearly showed the Petitioner's face during the commission of the alleged offenses. Trial counsel stated that he could have tried case 37 since the Petitioner never confessed to digitally penetrating victim in that case. However, trial counsel recommended accepting the plea offer resolving both cases because the sentences were going to run concurrently. He explained that the State's offer was a package deal and that the State would not allow the Petitioner to plead guilty to one case without pleading to the other. He stated that the Petitioner had the option of entering an open guilty plea to case 38 but explained that he considered that to be "guilty plea suicide" given the facts of the case and the law on consecutive sentencing.

Trial counsel stated that the State revoked its original offer of twenty years after the Petitioner delayed his decision. Trial counsel said that he "begged and begged and begged" to get the twenty-year offer back on the table and that the State eventually agreed to a twenty-one-year deal. Trial counsel spent several hours discussing the offer with the Petitioner on the day he entered his plea. When trial counsel was asked whether lifetime supervision was discussed as part of the negotiated plea, trial counsel responded:

Absolutely. And I advised [the Petitioner] that he would be on the registry for life. And I think when he testified a minute ago, he mentioned that he would be on the registry but didn't know it was going to be like having to report to anybody, or having to be, like, on parole but he knew that it carried a lifetime registration on the sexual offender registry without a doubt.

Following the hearing, the post-conviction court denied the petition for relief, concluding that the Petitioner failed to show by clear and convincing evidence that trial counsel's performance was deficient and prejudicial. The court also determined that the guilty plea was entered freely, voluntarily, and knowingly.

## ANALYSIS

On appeal, the Petitioner argues that his guilty plea was entered unknowingly and involuntarily due to ineffective assistance of counsel. The Petitioner maintains that he never wanted to plead guilty in case 37 and that he did not understand what community supervision for life entailed. Although the Petitioner fails to specify in his brief the alleged deficiencies of trial counsel, he challenges trial counsel's effectiveness only to the extent that it rendered his guilty plea involuntarily and unknowingly entered. Nevertheless, the Petitioner is not entitled to relief because we conclude the Petitioner entered a voluntary and knowing guilty plea.

To be granted post-conviction relief, a petitioner must establish that his conviction or sentence is void or voidable due to the abridgement of any constitutional right. T.C.A. § 40-30-103. The petitioner has the burden of proving the allegations of fact by clear and convincing evidence. *Id.* § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Factual findings by the post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its inferences for those drawn by the trial judge, and "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 24, 31 (1970)). To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that

counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim for ineffective assistance, a petitioner must prove "that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). On review, counsel's performance is not to be measured by "20-20 hindsight." *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). Instead, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). A claim of ineffective assistance of counsel is a mixed question of law and fact that is reviewed de novo with no presumption of correctness. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008).

The United States Supreme Court has held that the Due Process Clause of the United States Constitution requires a guilty plea to be entered knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). The standard for evaluating whether a plea was entered into knowingly and voluntarily is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31 (citations omitted). To determine whether a guilty plea was voluntary and intelligent, the court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). In making this determination, the court looks to various circumstantial factors, such as:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citation omitted). A plea resulting from ignorance, misunderstanding, coercion, inducements, or threats is not "voluntary." *Id.* The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010).

The Petitioner asserts that he did not enter his plea voluntarily because the statements he made in the plea colloquy show that he never wanted to plead guilty to case 37. He specifically contends that once he stated that he only wanted to plead guilty to one case and not the other, the trial court should have ended the colloquy. A close review of the transcript shows that after the Petitioner made this statement, the trial court responded:

> That's not the deal and I'm not going to sit here and argue with you. If I end up giving these papers back to the State, then the deal is over with…. My question to you is one and only one question[,] which you've already discussed with your attorney. Do you want to plead guilty to these four [charges] as I've gone over them with you?

The Petitioner responded that he did want to plead guilty, and the plea colloquy continued. The trial court properly handled the Petitioner's statement by clarifying the plea offer and asking if the Petitioner still wanted to continue with the plea.

The fact that the Petitioner exhibited some reservations at the beginning of the hearing about pleading to both cases does not render his pleas involuntary. The Petitioner had been given time to discuss the plea with trial counsel, and trial counsel testified that they spent several hours discussing the offer. The Petitioner asked questions regarding the terms of the plea agreement and expressed some confusion as to whether he could enter an *Alford* plea, but the trial court answered the Petitioner's questions and made clear that if he was going to plead guilty, it would be to the facts as asserted by the State. The Petitioner was asked multiple times whether he wanted to continue with the plea, to which the Petitioner answered affirmatively. The trial court twice asked the Petitioner if he was entering his plea voluntarily, and he replied affirmatively. Therefore, we conclude that the Petitioner was fully aware that the plea agreement applied to both cases and that he voluntarily entered his plea in accordance with the agreement. Accordingly, the Petitioner is not entitled to relief on this ground.

The Petitioner also argues that he did not enter his guilty plea knowingly because he did not understand what community supervision for life required. "[A] lawyer's failure to advise his or her client about the mandatory lifetime community supervision sentence … is deficient performance." *Calvert v. State*, 342 S.W.3d 477, 490 (Tenn. 2011) (concluding counsel was ineffective where both trial counsel and the trial court failed to inform a defendant of the mandatory community supervision requirement prior to entering a guilty plea); *see also Ward*, 315 S.W.3d at 467 ("[T]rial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea."). The Petitioner relies on *State v. Nagele*, which held that the State has the burden of showing harmless error where a

trial court has failed to advise a defendant of mandatory lifetime community supervision prior to accepting a guilty plea. 353 S.W.3d 112, 120-21 (Tenn. 2011). The Petitioner's reliance is misplaced because the guilty plea transcript clearly shows that the trial court did inform the Petitioner of the lifetime supervision requirement. Instead, the Petitioner essentially argues that, at the time he entered his plea, he was unaware of what lifetime supervision entailed.

The Petitioner testified at the post-conviction hearing that he did not understand what lifetime community supervision required. Trial counsel was never questioned as to whether he explained what lifetime supervision required to the Petitioner. It is clear, however, that when the Petitioner asked what lifetime community supervision was during the plea colloquy, the trial court told the Petitioner he would have to report and follow a set of rules for life. The trial court also advised the Petitioner to talk to his attorney for more details and twice asked the Petitioner whether he had any questions for trial counsel before accepting the guilty plea. In concluding that the Petitioner failed to show that his plea was entered into involuntary and unknowingly, the post-conviction court noted the evidence demonstrated that the trial court "ensure[d] that the Petitioner had a full understanding of the plea and the consequences of it." By denying the petition for relief on this ground, the post-conviction court implicitly declined to credit the Petitioner's testimony that he was unaware of what lifetime supervision entailed. The evidence does not preponderate against the post-conviction court's factual findings. *See Ward*, 315 S.W.3d at 465. Thus, we conclude that the Petitioner has failed to establish by clear and convincing evidence that he was not aware of what lifetime community supervision required and that, had he known, he would not have entered his guilty plea. *Compare Jacob Stephen Love v. State*, No. M2012-00135-CCA-R3-PC, 2012 WL 6098318, at *7 (Tenn. Crim. App. Dec. 7, 2012) (declining to hold that trial counsel was ineffective where counsel testified that he informed petitioner of lifetime supervision term and that he believed he showed petitioner a copy of the sexual offender probation guidelines); *with Chad Alan Parker v. State*, No. M2007-02799-CCA-R3-PC, 2008 WL 2938046, at *8 (Tenn. Crim. App. July 31, 2008) (concluding defendant's plea was involuntary where counsel admitted to misinforming petitioner that lifetime community supervision had the same requirements as registering as a violent sex offender).

## CONCLUSION

Based on the foregoing, we affirm the post-conviction court's denial of the Petitioner's post-conviction petition.

_____
JOHN EVERETT WILLIAMS, JUDGE