IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 19, 2023

## KIP DYLANE BUIE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lawrence County**
**No. 36009, 34998, 35244     Stella L. Hargrove, Judge**

———————————————————

### No. M2022-01232-CCA-R3-PC

———————————————————

The Petitioner, Kip Dylane Buie, pled guilty to second degree murder and attempted second degree murder.  He received an effective forty-year sentence.  Subsequently, he filed a petition for post-conviction relief, alleging that his plea counsel was ineffective during the plea process and that his guilty pleas were not knowingly and voluntarily entered.  After a hearing, the post-conviction court denied the petition, and the Petitioner appealed to this Court.  On our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

Casey A. Long, Lawrenceburg, Tennessee, for the appellant, Kip Dylane Buie.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Gary Howell and Christi Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

### A.    GUILTY PLEAS

On April 1, 2019, the Petitioner pled guilty to the second degree murder of his mother, and he was sentenced to serve a term of twenty-five years.  He also pled guilty to

the attempted second degree murder of Mr. Thomas Wright, and he was sentenced to serve a term of fifteen years. Pursuant to the plea agreement, the trial court ordered that the sentences be served consecutively.

At the plea hearing, the Petitioner initially stated that he thought he could "beat" the attempted murder charge. Due to this statement, the trial court advised him to go to trial instead of pleading guilty. Plea counsel explained to the trial court that the Petitioner initially thought he should have been charged with aggravated assault, but, after further discussions with counsel, knew that he would be convicted of attempted first degree murder at trial. The trial court clarified that the Petitioner, not counsel, had to decide whether to plead guilty or go to trial. The court told the Petitioner it would hold a trial quickly if he wished to proceed.

At that point, plea counsel asked for a ten-minute recess to speak with the Petitioner. Upon returning to court, the Petitioner insisted upon accepting the plea agreement. The Petitioner affirmed that he understood that he was a Range I, standard offender, but that he was pleading outside his range as a Range II, multiple offender with release eligibility after serving thirty-five percent of his sentence in confinement. The trial court observed that the Petitioner's sentences would be served consecutively, and when asked if he knew what that meant, the Petitioner answered, "That means following each other."

The Petitioner told the court that he was thirty-six years old and had attended school through the eleventh grade. He confirmed he had sufficient time to discuss his case with plea counsel.

The Petitioner stated that no threats or promises were made to get him to plead guilty. He also acknowledged the rights he was waiving by entering the guilty pleas and agreed that he was pleading guilty freely and voluntarily. The Petitioner further stated that he understood the terms of his plea agreement. The trial court found that the Petitioner entered the guilty pleas "freely, voluntarily, knowingly and intelligently, upon the advice of counsel."

The State recounted a factual basis for each offense. Regarding the second degree murder conviction, the State said the proof at trial would have shown that on or about January 23, 2018, first responders were dispatched to the home of the Petitioner and his mother, Glenda Gail Buie. Upon arriving, they found the Petitioner and Ms. Buie. Ms. Buie was unresponsive, and she was taken to the hospital, where she died four days later. The medical examiner determined that the cause of her death was manual strangulation.

Regarding the attempted second degree murder conviction, the State said the proof at trial would have shown that on or about January 27, 2018, the Petitioner was at the home of Mr. Thomas Wright. While there, the Petitioner struck Mr. Wright in the back of his head with a hammer and attempted to take Mr. Wright's gun. The Petitioner fled the scene and was later arrested.

## B.   POST-CONVICTION PROCEEDINGS

On November 1, 2019, the Petitioner filed a pro se petition for post-conviction relief. In the petition, he maintained that (1) his guilty pleas were not knowingly, voluntarily, and intelligently entered; and (2) he received the ineffective assistance of counsel during the plea proceedings. The post-conviction court appointed an attorney to represent the Petitioner, but no amended petition was filed.

### 1.   Petitioner's Testimony

The post-conviction court held a hearing on January 13, 2021. At the hearing, the Petitioner testified that he never felt that plea counsel was "on [his] side." He stated that plea counsel did not speak often with him about the charges, and he did not think the preparation time was appropriate. In preparation for trial, the Petitioner underwent a forensic evaluation at the Middle Tennessee Mental Health Institute around December 2018.

According to the Petitioner, the State initially offered a plea agreement "with an aggravated assault charge[.]" He noted that the State insisted that he plead guilty to both charges in a "package deal" or otherwise face a trial on each. The Petitioner said he wanted to go to trial because he was not guilty of the charges, but he did not think plea counsel would be helpful or supportive. The Petitioner testified that he did not know how to ask the trial court to appoint a new lawyer or tell the court that he had no confidence in plea counsel.

The Petitioner said he "lacked sleep" and was "not stable" on the day of the plea hearing. He explained, "[T]hat's a lot of pressure, and it's not a clear state of mind going into a court hearing on a case that big." He also suffered from depression, which was treated with medication. He stated that during the plea hearing, his anxiety, depression, and headaches impacted his thought processes.

Additionally, the Petitioner claimed that plea counsel cautioned him that if he went to trial, he risked receiving a life sentence. The Petitioner alleged that plea counsel

threatened him with the death penalty; however, he clarified that he meant that she threatened him with the possibility of a life sentence.

After these discussions, the Petitioner said he still wanted to go to trial but "didn't know what to do under so much pressure." Nevertheless, he decided to plead guilty because he lacked confidence in plea counsel's abilities. He wanted to avoid the risk of a life sentence and believed that plea counsel did not want to represent him.

### 2. Plea Counsel's Testimony

Plea counsel testified that due to the severity of the charges, she asked for an evaluation to determine the Petitioner's competency to stand trial. The evaluation found that the Petitioner was competent to stand trial and that neither an insanity nor a diminished capacity defense could be supported. Additionally, the evaluating clinician advised "that it will be necessary for the [Petitioner] to take psychiatric medication in order for his psychiatric condition to remain sufficiently stable to remain competent to stand trial."

Plea counsel testified that she had no concerns about the Petitioner's competency. She noted that the Petitioner had been a drug user, but that he had been incarcerated for some time before she began representing him. She stated that the Petitioner did not mention having any issues with his mental health or well-being.

Plea counsel stated that the Petitioner never expressed any lack of confidence in her and that she had "many conversations" with him. She cautioned the Petitioner that if he went to trial on the first degree murder charge and were convicted, he would face a life sentence.

Plea counsel said that the first plea offer the Petitioner received from the State was an effective sentence of forty-five years. Specifically, the State offered for the Petitioner to plead guilty to second degree murder with a sentence of thirty-five years at one hundred percent and attempted second degree murder with a consecutive sentence of ten years at thirty percent. Plea counsel acknowledged that the Petitioner wished to go to trial on the attempted murder charge related to Mr. Wright. However, he did not want to go to trial on the charge related to his mother, and the State would not accept a plea to only one of the two cases. As such, the Petitioner ultimately accepted "a compromised offer" negotiated by plea counsel with the State.

Plea counsel explained that, although the Petitioner admitted that he hit Mr. Wright, he thought the offense should be "tried separately as a self-defense charge[.]" She reviewed the elements of the offenses with the Petitioner and explained the defense of self-

4

defense. Nevertheless, she advised the Petitioner that she was ready to try the cases if he wished to do so. At that point, the Petitioner decided to enter the guilty pleas.

### 3. Denial of Post-Conviction Relief and Appeal

On January 22, 2021, the post-conviction court entered an order denying the petition. The post-conviction court found that the Petitioner was not a credible witness and that he had not offered any proof to establish his claims.

The Petitioner filed an untimely notice of appeal on September 1, 2022. This Court ordered the Petitioner to explain whether the requirement of a timely-filed notice of appeal should be waived. Upon review of the Petitioner's response, this Court waived "the filing deadline for the notice of appeal" and permitted "this appeal to proceed in accordance with the applicable rules."

### ANALYSIS

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner has the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). For evidence to be clear and convincing, "it must eliminate any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (citation and internal quotation marks omitted).

In this case, the Petitioner generally alleges that he did not understand his guilty plea or its terms. Our supreme court has recognized that "[t]he validity of a guilty plea is a mixed question of law and fact." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). As such, our review of whether the Petitioner entered a valid guilty plea in this case is de novo, applying a presumption of correctness only to the post-conviction court's findings of fact. *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020).

When a defendant enters a guilty plea, he or she "waives several constitutional rights, including the privilege against self-incrimination, the right to a trial by jury, and the right to confront his accusers." *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). To that end, "[i]n the landmark case of *Boykin v. Alabama,* 395 U.S. 238 (1969), the United States Supreme Court held that to satisfy the Due Process Clause of the United States

5

Constitution, a guilty plea must be entered knowingly, voluntarily, and intelligently." *Garcia v. State*, 425 S.W.3d 248, 262 (Tenn. 2013). Thus, a claim challenging the constitutional validity of a guilty plea "falls squarely within the ambit of issues appropriately addressed in a post-conviction petition." *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000).

To determine whether a guilty plea was knowingly, voluntarily, and intelligently entered, a court must consider "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citation and internal quotation marks omitted). A defendant cannot make this voluntary and intelligent choice if the decision "results from, among other things, ignorance or misunderstanding." *State v. Nagele*, 353 S.W.3d 112, 118 (Tenn. 2011). Therefore, before a trial court may accept a guilty plea, it must canvass "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Garcia*, 425 S.W.3d at 262 (citation and internal quotation marks omitted).

Ultimately, the issue of "whether an accused's plea of guilty was voluntarily, understandingly, and knowingly entered is to be determined based upon the totality of the circumstances." *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Rigger v. State*, 341 S.W.3d 299, 308-09 (Tenn. Crim. App. 2010). Our supreme court has recognized several factors that may inform this analysis, including the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the [trial] court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006).

In this case, the Petitioner offers two reasons why his guilty pleas were not knowingly, voluntarily, and intelligently entered. First, he asserts that he was denied the effective assistance of counsel before entering his plea. More specifically, he argues that plea counsel was not prepared for a trial and that, although he wished to have a trial, he was forced to accept a plea because he did not know how to request another lawyer. Second, he asserts that he was not competent to enter a plea. He argues that he suffered from cognitive impairments and that he experienced anxiety, depression, and headaches during the plea and in the days leading up to the plea. We take each of these issues in turn.

6

## A.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, the Petitioner argues that he received the ineffective assistance of counsel because his plea counsel was not prepared to try his case. Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that all criminal defendants "shall enjoy the right . . . to have the [a]ssistance of [c]ounsel[.]" "These constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). A petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

Counsel is responsible for rendering effective assistance "during the plea bargain process, as at all critical stages of the criminal process." *Nesbit*, 452 S.W.3d at 787. Thus, counsel's "effectiveness may implicate the requirement that a plea must be entered knowingly and voluntarily, *i.e.*, that the petitioner made the choice to plead guilty after being made aware of the significant consequences of such a plea." *Johnson v. State*, No. W2015-02498-CCA-R3-PC, 2017 WL 192710, at *4 (Tenn. Crim. App. Jan. 17, 2017), *no perm. app. filed*; *see State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). Stated another way, once a defendant enters a guilty plea, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

At the post-conviction hearing, the Petitioner testified that he had no faith in counsel and wanted to go to trial because he thought he could "beat the attempted first degree murder charge." However, the post-conviction court found that the Petitioner was "not a credible witness." Instead, the court implicitly accredited the testimony of plea counsel, who testified that she was prepared to try both cases. Plea counsel testified that she met with the Petitioner and discussed the charges, his potential sentencing exposure, and the plea offers. She also negotiated a more favorable plea agreement for the Petitioner, and she said that the Petitioner never indicated that he lacked confidence in her representation.

The post-conviction court found that the Petitioner failed to establish that counsel rendered deficient performance or that any alleged deficiency prejudiced the Petitioner. Upon our review of the record, we conclude that the evidence fully supports the post-conviction court's findings that the Petitioner's guilty pleas were not rendered unknowing or involuntary due to any alleged ineffective assistance by counsel. *See also Merritt v.*

7

*State*, No. W2021-01448-CCA-R3-PC, 2022 WL 17077555, at *13 (Tenn. Crim. App. Nov. 18, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023); *Payne v. State*, No. E2021-01017-CCA-R3-PC, 2022 WL 3683793, at *8 (Tenn. Crim. App. Aug. 25, 2022), *no perm. app. filed*.

## B. KNOWING AND VOLUNTARY GUILTY PLEA

The Petitioner also asserts that his guilty pleas were not knowingly and voluntarily entered as required by *Boykin v. Alabama*. He argues that "he was suffering from anxiety, depression, and headaches both on the date of the plea and in the days leading up to [the] same." He also maintains that he was not stable at the time of the pleas because he had not been sleeping and was under pressure. The Petitioner asserts that he is a "mildly mentally-retarded person whose cognitive ability is significantly impaired due to an infantry head injury and decade-long drug abuse."

The State responds that the post-conviction court properly found that the Petitioner failed to establish that his guilty pleas were not knowingly and voluntarily entered. The State noted that the Petitioner did not claim that he had an intellectual disability until his pro se "Notice of Delayed Appeal," which was filed after the post-conviction court entered its order denying the petition.

### 1. Absence of Medical Proof

When a petitioner asserts that his or her mental health issues affected the plea, the petitioner should offer "independent corroboration that he [or she] was incapable of making a rational decision." *Burrell v. State*, No. M2015-02115-CCA-R3-PC, 2017 WL 943363, at *11 (Tenn. Crim. App. Mar. 9, 2017), *no perm. app. filed*. For example, the petitioner should present medical testimony or evidence to support or corroborate his claims that a mental health impairment rendered his plea unknowing or involuntary. *Wright v. State*, No. W2019-02116-CCA-R3-PC, 2020 WL 5742872, *6 (Tenn. Crim. App. Sept. 24, 2020), *no perm. app. filed*. This proof could include, for example, evidence from mental health records or from a mental health professional attesting that the petitioner suffered from a mental health condition that affected the petitioner's cognitive abilities or his level of understanding. *Mack v. State*, No. E2019-00273-CCA-R3-PC, 2021 WL 753643, at *6 (Tenn. Crim. App. Feb. 26, 2021), *no perm. app. filed*.

During the post-conviction hearing, although the Petitioner testified generally about alleged mental health conditions, his testimony was specifically discredited by the post-conviction court. The Petitioner also failed to offer the testimony of a mental health

professional or any mental health records to substantiate his claim that he was incapable of making a rational decision.

Instead, the Petitioner cites the fact of plea counsel's two requests for pretrial competency evaluations as evidence that he must have had a mental illness. However, each evaluation found the Petitioner competent to proceed to trial, and the Petitioner does not identify anything in the completed evaluations to support his argument that he was incapable of making rational decisions. Indeed, plea counsel testified that the evaluations were requested because of the severity of the cases and not because of any concerns about the petitioner's mental health. Because the Petitioner failed to support his claim with independent corroborative proof that he could not make a rational decision, we affirm the judgment of the post-conviction court denying relief on these grounds.

## 2. Petitioner's Statements at the Plea Hearing

The post-conviction court also denied the petition because of the Petitioner's statements made during his plea hearing. The court reviewed the transcript from that hearing and made findings in three separate areas. First, the post-conviction court found that the Petitioner was properly advised of his constitutional rights. The court found that the Petitioner "understood those rights, waived his right to a trial by jury, and more than once advised the Court he wanted the Court to accept his plea." The record fully supports these findings.

Second, the post-conviction court found that the plea was voluntary, in part, due to the Petitioner's decision to accept the agreement. The record also supports this finding as well. At the beginning of the plea hearing, the trial court informed the Petitioner that he did not have to plead guilty and could choose a trial instead. The Petitioner responded that he could "beat the attempted [murder] case." The court observed, "Well, then you shouldn't plead. You should go to trial, then."

The trial court permitted the Petitioner to speak with plea counsel, and after their discussion, the Petitioner announced that he wished to proceed with the plea. As the post-conviction court observed in its order:

Page 4 of the plea transcript reflects that Mr. Buie told the Court he thought "he could beat that attempted case." The Court advised him he should not plead and go to trial. Page 5 reflects that the Court took a break so that Mr. Buie could have further discussions with his lawyer. After a break, Mr. Buie testified that he wanted to go forward with his plea. Mr. Buie never wavered in staying with his plea beyond that.

9

We also note that the Petitioner denied needing additional time to discuss the plea agreement with plea counsel, and he affirmed that he had "plenty of time to talk about this" with his lawyer.

Third, the post-conviction court found that the Petitioner understood the consequences of his plea. Again, the record fully supports this finding. The record shows that the trial court reviewed the conviction offenses, the nature of the sentences, the presence of consecutive sentences, the increased release eligibility, and the role of the Department of Correction in calculating release dates. The Petitioner acknowledged each of these aspects of his plea, including that the plea agreement would result in him "taking more [time] than the Court could give [him]."

Indeed, the Petitioner's awareness of the terms of the agreement can be seen in his responses to the trial court's questions. For example, when the trial court asked the Petitioner what "consecutive" meant during the discussion of the sentence to be imposed, the Petitioner answered, "That means following each other." Similarly, the trial court later asked the Petitioner to identify the proposed sentence. The Petitioner responded, correctly, "Twenty-five at a hundred percent and 15 consecutive at 35 percent."

Finally, the Petitioner's awareness of the agreement can be seen in his answers to the trial court's questions. We have also recognized that where a petitioner asks questions during the plea colloquy, these questions may show that the petitioner was "alert and focused on his plea during the hearing." *Weaver v. State*, No. W2017-00172-CCA-R3-PC, 2018 WL 324348, at *6 (Tenn. Crim. App. Jan. 5, 2018), *no perm. app. filed*; *Sanders v. State*, No. W2019-01797-CCA-R3-PC, 2020 WL 7042934, at *5 (Tenn. Crim. App. Nov. 30, 2020) (finding voluntary plea, in part, "[t]he Petitioner engaged the trial court with multiple questions and discussed his plea agreement with counsel before entering the guilty plea in this case."), *perm. app. denied* (Tenn. Apr. 8, 2021); *Stevens v. State*, No. M2018-00530-CCA-R3-PC, 2020 WL 91837, at *9 (Tenn. Crim. App. Jan. 8, 2020) (finding voluntary plea, in part, where "Petitioner even took the time to clarify how his sentence alignment would affect his parole eligibility, showing that he was not just mindlessly saying 'yes' to every question asked by the trial court."), *perm. app. denied* (Tenn. Apr. 15, 2020). In this case, the record shows that the trial court asked the Petitioner whether he had any questions on at least four occasions, noting that "[i]f you have any questions about any of this, it is good to ask right now." The Petitioner asked questions regarding the running of the consecutive sentences. He also told the court that the discussion of pretrial credits was confusing "at first," but that "we got it straightened out. I understand." At the end of the hearing, he represented to the court he had no further questions.

A "defendant's solemn declaration in open court that his plea is knowing and voluntary creates 'a formidable barrier in any subsequent collateral proceeding' because

these declarations 'carry a strong presumption of verity.'" *Transou v. State*, No. W2022-00172-CCA-R3-PC, 2022 WL 8047703, at *6 (Tenn. Crim. App. Oct. 14, 2022) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), *no perm. app. filed.* The record supports the post-conviction court's finding that the Petitioner's plea was knowingly and voluntarily entered. The Petitioner is not entitled to relief.

## CONCLUSION

In summary, we hold that the record supports the findings of the post-conviction court that the Petitioner entered knowing, voluntary, and intelligent pleas of guilty. Accordingly, because the Petitioner's convictions or sentences are not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief in all respects.

_____
TOM GREENHOLTZ, JUDGE

11